FILED
2014 Jul-30  AM 10:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | | |
|---|---|---|
| **BRENDA ROBERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **6:12-cv-3586-AKK** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Brenda Roberson ("Roberson") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is not supported by substantial evidence and that the ALJ failed to apply proper legal standards in considering Roberson's claim. Therefore, for the reasons elaborated herein, the court will reverse the decision denying benefits and remand the case for further proceedings.

### I.  Procedural History

Roberson, whose past relevant experience includes work as a payroll clerk and truck dispatcher, filed an application for Title II disability insurance benefits and Title XVI Supplemental Security Income on June 20, 2008, alleging a disability onset date of

March 30, 2008, due to migraine headaches, sleep apnea, and back pain.  (R. 9, 248).

After the SSA denied Roberson's claim, she requested a hearing before an ALJ.  (R. 99-100).  The ALJ subsequently denied Roberson's claim, (R. 6-13), which became the final decision of the Commissioner when the Appeals Council refused to grant review.  (R. 1-5).  Roberson then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence.  *See id.*  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)    whether the claimant is currently unemployed;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals one listed by the Secretary;

3

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national
        economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to

any of the above questions leads either to the next question, or, on steps three and five, to

a finding of disability.  A negative answer to any question, other than step three, leads to

a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once

a finding is made that a claimant cannot return to prior work the burden shifts to the

Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559

(11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet

additional criteria.  In this circuit, "a three part 'pain standard' [is applied] when a

claimant seeks to establish disability through his or her own testimony of pain or other

subjective symptoms."  *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991).

Specifically,

> The pain standard requires (1) evidence of an underlying medical condition
> and either (2) objective medical evidence that confirms the severity of the
> alleged pain arising from that condition or (3) that the objectively
> determined medical condition is of such a severity that it can be reasonably
> expected to give rise to the alleged pain.[1]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

---

[1]  This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*,
761 F.2d 1545, 1548 (11th Cir. 1985).

4

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself.* Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id.*

5

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ found that Roberson had not engaged in substantial gainful activity since March 30, 2008, and, therefore, met Step One.  (R. 10).  Next, the ALJ found that Roberson satisfied Step Two because she suffered from the severe impairment of "headaches."  *Id*.  The ALJ then proceeded to the next step and found that Roberson failed to satisfy Step Three because she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  *Id.*.  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Roberson has the residual functional capacity (RFC) to perform "sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) that would not be precluded by six to eight headaches monthly."  (R. 11).  In light of her RFC, the ALJ held that Roberson "is capable of performing past relevant work as a payroll clerk and truck dispatcher."  (R. 12).  Therefore, the ALJ found that Roberson "has not been under a disability, as defined in the Social Security Act, from March 30, 2008, through the date of this decision."  (R. 13).

## V.  Analysis

The court now turns to Roberson's contentions that (1) substantial evidence does not support the ALJ's decision to reject Roberson's testimony; and (2) the ALJ failed to

consider Roberson's testimony of disabling migraine headaches in accordance with the relevant legal standards.[2]  Doc. 7 at 11-17.

> A.     Substantial Evidence

Roberson testified that she suffers from six to eight migraine headaches per month that require her to lie down in a dark room, (R. 42), and contends substantial evidence does not support the ALJ's decision to reject her testimony.  As mentioned in Section III, *supra*, the pain standard in this circuit requires in part that the ALJ determine whether the objective medical evidence confirms the severity of the alleged pain or that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain.  *Holt*, 921 F.2d at 1223.  Here, the ALJ never mentioned the pain standard, nor explicitly made findings regarding whether objective

---

[2]  Because the ALJ erred in considering Roberson's pain testimony, the court does not need to consider in detail Roberson's other contentions–i.e., that the ALJ impermissibly ignored diagnoses from Roberson's treating neurologists, and that the ALJ's hypothetical question to the vocational expert (VE) did not include all of Roberson's limitations.  However, the court notes that the ALJ's question to the VE is problematic because it did not specify how many of Roberson's migraine headaches would occur during the workweek.  Specifically, the ALJ asked the VE to assume Roberson would have "six to eight migraines a month–and of course some of them are at night not during work, some of them are on the weekend and not during work, some might be during the week." (R. 44).  The ALJ did not specify how many would occur during each of those time periods, and the VE did not specify a number in his answer.  *Id.*  Without that information, it is impossible to determine whether the VE's testimony supports the ALJ's finding that Roberson could perform sedentary work "that would not be precluded by six to eight headaches monthly." (R. 11).  This issue should be addressed on remand.

medical evidence confirmed the severity of Roberson's alleged pain, or if Roberson's

medical condition could reasonably be expected to cause disabling migraine headaches.

Still, because the ALJ made credibility findings, which clearly implies that he found

Roberson met the pain standard, this omission is not fatal.  *See Tieniber v. Heckler*, 720

F.2d 1251, 1255 (11th Cir. 1983) ("Although this circuit does not require an explicit

finding as to credibility . . . the implication must be obvious to the reviewing court.").

Therefore, the court must review the ALJ's credibility finding to determine if it is

supported by substantial evidence.

Although this court defers to the ALJ's fact finding, it "must still make certain

that [the ALJ] has exercised reasoned decision making," which requires the court to

"evaluate the ALJ's findings in light of the entire record, not only that evidence which

supports [his decision]."  *Owens v. Heckler*, 748 F.2d 1511, 1514 (11th Cir. 1984).

Based on its review of the entire record, the court finds that the ALJ improperly focused

on one aspect of the evidence, to the exclusion of others, to find Roberson was not

credible.  Specifically, the ALJ's entire credibility finding is based on Roberson's

reported activities and the ALJ's inference of an active lifestyle based on physical

examination findings:

> In particular, I find the claimant's level of activity inconsistent with the
> almost daily "bad" to "severe" headaches that she documents on her
> headache calendars (Exhibits 19F, 29F, 33F).  When she saw Raj Phoha,
> PhD, for a consultative psychological evaluation in connection with her
> disability claim, the claimant reported that she takes care of the household
> chores and her family members, does laundry, cooks, shops, pays bills, and

budgets the finances for household matters (Exhibit 6F).  She remarried in
July 2008 and reports that she visits with family and friends, watches
television, listens to music, enjoys watching sports, attends religious
services weekly, and enjoys reading the newspaper, magazines, and books.
She also assists in the feeding and care of several horses.

The claimant's leisure activities are also inconsistent with the chronic
severe, debilitating pain that she alleges.  She gardens, goes fishing, and,
according to a July 2009 report, goes camping (Exhibit 22F).  Current
findings on physical examination include normal muscle tone, strength, and
bulk in the upper and lower extremities with no evidence of muscle
atrophy—all indications that the claimant has been maintaining and
continues to maintain a physically active lifestyle.

(R. 12).  In making this finding, the ALJ overlooks that in this circuit, "participation in
everyday activities of short duration, such as housework or fishing, [does not]
disqualif[y] a claimant from disability."  *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th
Cir. 1997).  Rather, an ALJ may rely on "*inconsistencies* between [a claimant's]
descriptions of her diverse daily activities and her claims of infirmity" to discredit her
allegations of disabling pain.  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)
(emphasis added).

Here, there are no inconsistencies between Roberson's reported activities and her
testimony of disabling headaches because Roberson testified that on days when she has
severe migraine headaches, she does not do housework, drive, go to the grocery store,
"work outside in the garden or anything like that," or go to church.  (R. 68).  Moreover,
there is no evidence that suggests Roberson engaged in the activities cited by the ALJ at
a frequency inconsistent with her testimony that she had six to eight disabling migraine

headaches per month.  Therefore, Roberson's testimony was not inconsistent with the ability to perform the daily activities cited by the ALJ on days when she did not suffer a migraine headache.[3]  Indeed, even the testimony of the medical expert (ME) engaged by the ALJ shows there was no inconsistency.  As the ME testified, migraine headaches would not affect Roberson's ability to engage in activities when she is not experiencing a migraine headache:

> The diagnosis of migraine does not impact upon the lifting capacity, does not impact on sitting capacity and does not impact on standing capacity with this exception, that people with migraines in the throes of a headache can only find it most tolerable to lie down in a dark room free of noise.

(R. 29).  The ME further testified that "[i]n between headaches there should not be exertional limitations beyond normal."  (R. 30).  In fact, to clarify the ME's testimony, the ALJ asked the following question:  "Well I guess [the] point is if you're suffering a migraine basically you're incapacitated.  If she's not suffering a migraine then she's okay."  *Id.*  The ME responded that the ALJ was correct.  *Id.*  Based on this evidence, the ALJ acknowledged at the hearing that Roberson's migraines would not cause limitations when she was not experiencing a headache:  "I'm taking it as a given.  Having had my own migraines, when you have a migraine headache it really totally incapacitates

---

[3]  For the same reason, the ALJ's reliance on examinations showing "normal muscle tone, strength, and bulk in the upper and lower extremities with no evidence of muscle atrophy" to find "[Roberson] has been maintaining and continues to maintain a physically active lifestyle," (R. 12), is misplaced.

someone, you can't do work with a migraine headache.  But when you don't have a migraine headache then you're okay." (R. 41).

Put simply, it was unreasonable for the ALJ to reject Roberson's testimony solely because of his unfounded assumption that Roberson's ability to engage in physical activities from time to time was inconsistent with disabling migraine headaches. Roberson testified that she did not engage in these activities on days when she had migraine headaches, (R. 68), and there is no evidence that she did so.  Moreover, the ME testified that the diagnosis of migraine headaches would not affect Roberson's ability to engage in the activities cited by the ALJ when she was not actually experiencing a headache.  (R. 29).  Therefore, substantial evidence does not support the ALJ's credibility finding.

B.     The Relevant Legal Standards

The ALJ also erred by failing to show that he applied the proper legal standards when considering Roberson's pain testimony.  The law is clear that an ALJ "must state with sufficient clarity the rule being applied in order to assure that a rational and consistent standard guides the agency's decision."  *Owens v. Heckler*, 748 F.2d 1511, 1514 (11th Cir.1984).  For this reason, "[a] clear articulation of both fact and law is essential to [allow this court] to conduct a review that is both limited and meaningful." *Id.* at 1514 -1515.  Unfortunately, here, the only reason the ALJ articulated for not crediting Roberson's testimony of disabling migraine headaches is based on the alleged

11

inconsistencies with her activities.  However, under the regulations, Roberson's daily

activities are only one of the factors that the ALJ must consider in assessing her

credibility.  Significant in this case, the other factors include "[t]he type, dosage,

effectiveness, and side effects of any medication" or other treatment Roberson received.

20 C.F.R. § 404.1529(c)(3).  As explained by Social Security Ruling (SSR) 96-7p:

> a longitudinal medical record demonstrating an individual's attempts to
> seek medical treatment for pain or other symptoms and to follow that
> treatment once it is prescribed lends support to an individual's allegations
> of intense and persistent pain . . . .  Persistent attempts by the individual to
> obtain relief of pain or other symptoms, such as by increasing medications,
> trials of a variety of treatment modalities in an attempt to find one that
> works or that does not have side effects, referrals to specialists, or changing
> treatment sources may be a strong indication that the symptoms are a
> source of distress to the individual and generally lend support to an
> individual's allegations of intense and persistent symptoms.

1996 WL 374186 at *7 (S.S.A.).  Although, the ALJ noted that Roberson had at various

times had been prescribed Lortab 7.5, Diamox, Stadol, Phenergan, Demerol, Imitrex,

Topamax, Paxil and Lamictal to control her pain, and that treatment notes indicate they

have been of little benefit and caused significant side effects, the ALJ did not discuss

how, if at all,  this extensive and largely unsuccessful medication regimen factored into

his credibility determination.  (R. 11-12).  Likewise, although the ALJ observed that in

2007 Roberson underwent a ventriculoscopy for endoscopic fenestration[4] of a suspected

---

[4] "Endoscopic Fenestration is done by making one or two dime sized holes in the skull.  The surgeon then guides the endoscope into the brain until it reaches the arachnoid cyst.  Then a small incision is made into the cyst to help the fluid flow out, so that the pressure is relieved."  http://arachnoidcystawareness.com/tag/fenestration/

12

choroid plexus cyst in her brain to relieve her headaches, he did not explain how this treatment affected his credibility determination.  (R. 11).  If the ALJ considered these factors as the regulations require, it is not reflected in his decision.  Therefore, the court is unable to determine whether the ALJ applied the proper legal standards in assessing Roberson's credibility.  The Commissioner shall consider these and other relevant factors on remand and state clearly how they affect the credibility decision.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Roberson's testimony was not credible is not supported by substantial evidence, and that the ALJ failed to apply proper legal standards in considering her credibility.  Therefore, the Commissioner's final decision is due to be **REVERSED** and **REMANDED** for further proceedings.  A separate order in accordance with the memorandum of decision will be entered.

Done this 30th day of July, 2014.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE